United States District Court
Southern District of Texas

**ENTERED**

July 16, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DEMOND HOUSTON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-2071 |
| | § | |
| WAL-MART STORES TEXAS, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS OF FACT & CONCLUSIONS OF LAW ON MOTION
FOR RELIEF FROM FINAL JUDGMENT**

Demond Houston moved for relief from the final judgment that this court entered on January 20, 2026, in his personal injury lawsuit against Wal-Mart. (Docket Entry No. 20). The attorneys who represented Houston in that lawsuit, John Daspit and Robert Morse of the Daspit Law Firm, told counsel for Wal-Mart that Houston would accept the $450,000 settlement amount Wal-Mart had offered. Daspit and Morse then moved for entry of final judgment, which the court granted. (Docket Entry No. 16). Houston moves for relief from that judgment based on his contention that he did not authorize Daspit and Morse to accept that settlement and instead instructed them to try the case.

Based on a review of the record, the parties' submissions, and the arguments of counsel, the court held an evidentiary hearing on April 13, 2026. (Docket Entry No. 33). Demond Houston; his wife, Joanna Houston; Daspit; and Morse testified. For the reasons explained below, the court finds that Daspit and Morse did not have actual authority to settle this case for $450,000. Houston's motion to vacate the judgment and reinstate the case, (Docket Entry No. 20), is granted. The court vacates the judgment and sets a scheduling conference for August 3, 2026, at 3:00 p.m. CDT, by Zoom. A link will be separately sent.

The record evidence supports the finding that Daspit and Morse did not have actual authority to settle Houston's case.  After mediation failed on December 16, 2025, Houston asked Daspit and Morse to "[g]o ahead" and "set" the case for trial."  (Docket Entry No. 25-3 at 2).  On December 18, Houston requested a case update, including on whether mediation will "resume[]."  (Docket Entry No. 19-2 at 3).  Morse responded that "[t]here is no update" because Houston's assessment that "the case was worth ten million dollars made the mediation a waste of time."  (*Id.*).  On December 30, Houston requested another update, and Morse reiterated that the case "isn't worth a fraction of the value you think it is worth so we just have to wait and see what a jury gives you."  (*Id.* at 5).  On January 12, 2026, after almost two weeks of no communication between Houston and Daspit and Morse through the cell phone that Houston presented records for, Daspit and Morse told counsel for Wal-Mart that Houston would accept its settlement offer of up to $400,000.  (Docket Entry No. 25-5 at 3; Docket Entry No. 23-3).  Daspit and Morse did not tell Houston of the settlement until three days later, on January 15, when he requested information.  (Docket Entry No. 19-2 at 7).

On hearing that his case had settled, Houston immediately texted Morse that "[n]othing was resolved" and that he had told Daspit and Morse to "let" the case "go to trial" and to "let a jury decide."  (*Id.*).  Despite this text message and earlier communications from Houston, on January 16, Morse filed an agreed take-nothing judgment.  (Docket Entry No. 16).  The court entered it on January 20.  (Docket Entry No. 17).  There is no record evidence that Morse or Daspit informed Houston that they had filed an agreed judgment or that the court had entered it.  After Houston requested another update on January 28, Daspit and Morse again told him that his case had settled.  Houston protested that they had settled the case without his authority.  (*See* Docket Entry No. 19-2 at 8–9).

2

The parties directly dispute whether Houston gave Daspit authority to settle the case during two unrecorded telephone conversations.  Houston testified that he went into the mediation demanding $10 million to settle but that Daspit persuaded him to accept between $2 million to $2.5 million.  (Tr. at 117:9–122:5).  Houston testified that he never gave Daspit or Morse authority to settle for between $400,000 and $2 million.  (*See* Tr. at 110:23–111:6).  Daspit testified that, at "the conclusion of mediation," Houston gave him authority "to settle [the] case for a number that is $400,000 or greater."  (Tr. at 82:4–10).  Daspit testified that he and Houston talked about settlement possibilities after mediation because the mediator was going to analyze the case and issue a mediator's settlement proposal.  (*See* Tr. at 83:20–84:9, 96:13–98:14; *see also* Tr. at 53:8–18, 58:11–14).

Daspit testified that, several weeks after the mediation, he had a phone conversation with Houston around Christmas—likely on December 30, 2025—during which Houston reaffirmed that he would settle the case for $400,000 or more.  (Tr. at 87:12–22, 98:15–99:11; *see* Tr. at 21:19–26:21; 147:7–148:22).  Houston does not remember this phone conversation.  (Tr. at 147:7–148:22).  Houston's and the former attorneys' phone records reflect that there was one December 30 call between Houston and Daspit and it lasted 15 seconds to one minute.  (Tr. at 29:13–30:24).  Daspit and Morse argue that in these conversations, Houston authorized them to settle the case for an amount above $400,000.

Daspit and Morse argue that the court's decision depends on credibility: theirs versus Houston's.  (Docket Entry No. 36).  They argue that Houston's testimony is not credible because he suffered a traumatic brain injury that affects his ability to recall events; he contacted various malpractice attorneys; he could not recall clearly his lowest settlement demand at the mediation; he swore that he was struck by a dock plate when he was struck by a pole; and he could not recall

how the mediation process and the mediator's proposal worked. (*Id.* at 1–2). They argue that Houston's testimony, given these issues, is insufficient to rebut the presumption that his attorneys had authority to settle the case.

The court accepts that while there are some reasons to doubt Houston's memory, his credibility was not as impaired as Daspit and Morse argue. But even assuming that Houston gave authority at the December 16 mediation, and on December 30, to settle the case for at least $400,000, those conversations did not justify the settlement and entry of judgment in the middle of January without notice to Houston and his confirmation.

"Authority conferred for a specified time terminates at the expiration of that period; if no time is specified, authority terminates at the end of a reasonable period." RESTATEMENT (SECOND) OF AGENCY § 105 (Am. L. Inst. 1958). "If no time is specified, what constitutes a reasonable time during which the authority continues is determined by the nature of the act specifically authorized, the formality of the authorization, the likelihood of changes in the purposes of the principal, and other factors." *Id.* cmt. b. Ultimately, "the agent has authority to act if, in view of all the circumstances, it is reasonable for him to believe that the principal still intends him to act." *Id.*

Based on the circumstances, it was not reasonable for Daspit and Morse to settle the case in January 2026 without talking to Houston at that time and obtaining his authorization to settle on the terms offered. The conversations in which Daspit claimed he had received Houston's authorization to settle the case were informal. The first relevant conversation between Daspit and Houston occurred at the end of the failed mediation. Daspit told Houston that Wal-Mart had offered $60,000, and Daspit thought the mediator's proposal would not reach $400,000. (Tr. at 85:15–86:6, 96:10–12, 97:11–98:14). The second relevant conversation between Daspit and Houston was less than a minute long and included little, if any, conversation about the case. (*See*

Tr. at 87:12–22, 98:15–99:11).  Even if Houston had told Daspit that he was interested in settling, he did so when the prospect of settlement appeared remote and when his view of the value of the case was, in his attorneys' view, inflated.  Houston credibly testified that he wanted to try the case because of the severity of his injuries.  (Tr. at 117:13–21, 118:5–119:8, 121:1–11, 132:11–133:6, 134:6–135:11, 144:13–22).

How Daspit and Morse settled the case further supports the conclusion that they lacked authority to do so.  On January 12, 2026, Houston asked Morse for an update on the case status, including when the case was set for trial.  (Docket Entry No. 19-2 at 6).  This request was consistent with Houston's other communications about going to trial.  (*See id.* at 2–17).  Morse did not respond.  Daspit settled the case the same day (or a short time afterward), without notifying Houston of either the settlement or the mediator's proposal.  (Docket Entry No. 23-3; Docket Entry No. 19-2 at 8–17; Tr at 103:10–18, 104:14–20).  There is no explanation in the record about why Daspit and Morse agreed to the settlement without first telling Houston about the offer and obtaining his consent.  (*See* Tr. at 102:5–105:5).  Morse did not inform Houston that his case had settled until January 15, after Houston sent Morse a follow-up request for an update.  (Docket Entry No. 19-2 at 7).

After hearing of the settlement, Houston expressed outrage, sending Morse a text protesting that "[n]othing was resolved" and that Houston wanted to "let" the case "go to trial" and "let a jury decide."  (*Id.*).  Despite this text message, and Houston's clear indication that he did not want to settle the case, on January 16, Morse filed on this court's docket an agreed take-nothing judgment.  (Docket Entry No. 16).  Morse had no satisfactory explanation for why he ignored his client's express wishes by filing the settlement on the docket.  Morse filed the dismissal paperwork because he was "not worried" that Wal-Mart was going to pay; they're "good for the money," in his words.

5

(Tr. at 60:19–24).  Obtaining what Morse thought was a realistic settlement amount, rather than following what he thought were his client's unrealistic expectations and instructions, appeared to take priority.  Daspit did not tell Houston about the settlement until two weeks later.  (*See* Tr. at 103:10–18).

The fact that Daspit and Morse did not communicate with Houston after the mediator's proposal tilts the preponderance of the evidence towards finding that they did not believe Houston would agree to the settlement they accepted on his behalf.  *See* RESTATEMENT (SECOND) OF AGENCY § 105 cmt. b ("[T]he agent has authority to act if, in view of all the circumstances, it is reasonable for him to believe that the principal still intends him to act.").  The court finds, by the preponderance of the evidence, that Daspit and Morse did not have actual authority to settle the case in January 2026, even though they acted on a good-faith belief that the settlement was reasonable and realistic.

For these reasons, the court grants Houston's motion for relief from the judgment, (Docket Entry No. 20), vacates the judgment, (Docket Entry No. 17), and sets a scheduling conference for August 3, 2026, at 3:00 p.m. CDT, by Zoom.

SIGNED on July 16, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge

6